ALEXANDRA JORDAN
3261 91st Street
Sturtevant, Wisconsin 53177

       Plaintiff,

   v.

CROSSROADS CARE CENTER OF KENOSHA LLC
8633 32nd Avenue
Kenosha, Wisconsin 53142

       Defendant

Case No: 21-cv-368

**JURY TRIAL DEMANDED**

# COMPLAINT

COMES NOW Plaintiff, Alexandra Jordan, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the court as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA"), under the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* ("ADAAA"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act, and pursuant to 28 U.S.C. § 1343 because this case involves an Act of Congress providing for protection of civil rights.

2. Venue in this District is proper pursuant to 28 U.S.C. 1391(b) and (c), because a substantial portion of the events or omissions giving rise to the claims occurred in this District, and Defendant has substantial and systematic contacts in this District.

## PARTIES AND COVERAGE

3. Plaintiff, Alexandra Jordan, is an adult female resident of the State of Wisconsin residing in Racine County with an address of 3261 91st Street, Sturtevant, Wisconsin 53177.

4. Defendant, Crossroads Care Center of Kenosha LLC, is a Wisconsin corporation with a principal place of business of 8633 32nd Avenue, Kenosha, Wisconsin 53142.

5. Defendant is a nursing home located in Kenosha, Wisconsin.

6. Defendant is owned, operated, and managed by AA Healthcare Management, Inc.

7. Defendant is a covered employer for purposes of the FMLA.

8. During Plaintiff's employment with Defendant, Defendant employed more than fifteen (15) employees.

9. Defendant is a covered employer for purposes of the ADA.

10. Defendant is a covered employer for purposes of Title VII.

11. During Plaintiff's employment with Defendant, Plaintiff did not meet the criteria under 29 C.F.R. § 825.217(a), which defines "key employee" as used in the FMLA.

12. During Plaintiff's employment with Defendant, Defendant employed at least 50 employees within 75 miles of Plaintiff's work site.

13. On or about March 12, 2021, Plaintiff filed an employment discrimination complaint against Defendant with the Equal Employment Opportunity Commission ("EEOC") – Milwaukee Area Office, designated as Charge No. 443-2021-01026, alleging violations of the ADA and Title VII.

14. The EEOC issued Plaintiff a Notice of Right to Sue on Charge No. 443-2021-01026, dated March 17, 2021.

15. Plaintiff has satisfied all administrative remedies and all conditions precedent to bringing this action.

**GENERAL ALLEGATIONS**

16. On or about January 27, 2020, Defendant hired Plaintiff into the position of Human Resources & Payroll Manager.

17. During Plaintiff's employment with Defendant, Plaintiff reported directly to Jamie Johnson, Administrator, until approximately December 2020 when Johnson's employment with Defendant ended. Subsequently, Plaintiff reported directly to Kimberly Storlie, Administrator. Both Johnson and Storlie reported directly to Vicki Grant, Regional Director of Operations for AA Healthcare Management, Inc.

18. During Plaintiff's employment with Defendant, Plaintiff primarily and physically worked at Defendant's Kenosha, Wisconsin location, located at 8633 32nd Avenue, Kenosha, Wisconsin 53142.

19. In approximately September 2020, Plaintiff informed Defendant that she was pregnant.

20. In approximately September 2020, Plaintiff informed Defendant that her pregnancy was high risk.

21. In approximately September 2020, Plaintiff informed Defendant that she was suffering from Gestational Diabetes as a result of her pregnancy.

22. In approximately September 2020, Plaintiff informed Defendant that she was attending weekly doctor's appointments because of her Gestational Diabetes as a result of her pregnancy.

23. In approximately September 2020, Plaintiff informed Defendant that her anticipated due date was in February 2021.

24. During Plaintiff's employment with Defendant, Plaintiff's Gestational Diabetes was a physical health condition that significantly and substantially impacted the normal functioning of her organ(s), immune system, endocrine system, blood glucose levels, and, at times, her ability to breathe, eat, sleep, think, care for herself, perform manual tasks and hobbies, and work.

25. During Plaintiff's employment with Defendant, Plaintiff's Gestational Diabetes required consistent and/or weekly medical monitoring and visits to her treating physician(s).

26. During Plaintiff's employment with Defendant, Plaintiff's Gestational Diabetes caused Plaintiff periods of incapacity.

27. During Plaintiff's employment with Defendant, Johnson, Storlie, and Grant were aware of and/or had knowledge of Plaintiff's Gestational Diabetes.

28. As of at least September 2020, Defendant knew or was aware that Plaintiff was suffering from a serious health condition that could qualify for FMLA leave.

29. During Plaintiff's employment with Defendant, Plaintiff's high risk pregnancy and Gestational Diabetes made her particularly susceptible to COVID-19, such that contracting COVID-19 could be incredibly harmful and dangerous to both Plaintiff and her unborn baby.

30. In approximately October 2020, Defendant experienced a COVID-19 outbreak at its Kenosha, Wisconsin location.

31. On or about October 12, 2020 and because of the COVID-19 outbreak at Defendant's Kenosha, Wisconsin location and because of Plaintiff's high risk pregnancy and Gestational Diabetes, Plaintiff began working virtually from home.

32. On or about October 8, 2020, Defendant received a doctor's note from Plaintiff's treating physician, stating: "Alexandra R Jordan is a patient of Advocate Medical Group. Based on review of her medical records and the CDC COVID-19 3/17/2020 update, this patient falls into a high-risk category for potential serious illness if exposed to COVID-19. We have instructed her to stay home from work for the next two weeks. She can return to work on 10-30-20."

33. On or about October 28, 2020, Defendant received a doctor's note from Plaintiff's treating physician, stating, in part: "Alexandra R Jordan is a patient of Advocate Medical Group. Based on review of her medical records and the CDC COVID-19 3/17/2020 update, this patient falls into a high-risk category for potential serious illness if exposed to COVID-19. … We have instructed her to stay home from work/or work from home through November 22, 2020."

34. On December 9, 2020, Grant sent Plaintiff an email, stating, in part, that Defendant "…will not be allowing you to complete your position at home," and that, "Unfortunately, you do not qualify for FMLA as you have not worked in the building for a year so that cannot be offered."

35. On December 9, 2020, Defendant received a doctor's note from Plaintiff's treating physician, stating: "Alexandra R Jordan is under my care for her pregnancy. She has an EDC of 2/24/2021. From 12-9-20 through duration of pregnancy she is to be off of work due to difficulties of being pregnant. Alex has a high risk pregnancy due to her diabetes and needs to

work from home only. She is not to go into work. Any questions or concerns please do not hesitate to call our office."

36. During Plaintiff's employment with Defendant, the job duties and responsibilities of her Human Resources & Payroll Manager could be performed virtually from home.

37. Between approximately October 2020 and January 2021, Plaintiff performed the job duties and responsibilities of her Human Resources & Payroll Manager virtually from home.

38. Between approximately October 2020 and January 2021, Plaintiff competently, adequately, and/or satisfactorily performed the job duties and responsibilities of her Human Resources & Payroll Manager virtually from home.

39. Between approximately October 2020 and January 2021, Defendant did not incur a financial cost vis-à-vis Plaintiff performing the job duties and responsibilities of her Human Resources & Payroll Manager virtually from home.

40. During Plaintiff's employment with Defendant, Defendant was aware that Plaintiff was going to be FMLA-leave eligible as of on or about January 27, 2021.

41. During Plaintiff's employment with Defendant, Defendant provided workplace accommodations to other similarly-situated, non-pregnant employees that Defendant did not provide to Plaintiff.

42. On or about January 18, 2021, Grant and Storlie called and spoke to Plaintiff via telephone (hereinafter simply, the "first January 18, 2021 telephone call").

43. During the first January 18, 2021 telephone call, Grant told Plaintiff: "The building is COVID free and we want you to return to work in the building ASAP," or words to that effect.

44. During the first January 18, 2021 telephone call, Grant told Plaintiff: "We've been fair enough with you working from home for this long," or words to that effect.

45. During the first January 18, 2021 telephone call, Plaintiff reminded Grant and Storlie that her pregnancy was high risk, that she was still suffering from Gestational Diabetes, and that her doctor required her to work virtually from home until she was FMLA-leave eligible as of on or about January 27, 2021 and/or until she gave birth in February 2021.

46. During the first January 18, 2021 telephone call, Plaintiff reminded Grant and Storlie that she had been performing and fulfilling the duties and responsibilities of her Human Resources & Payroll Manager position virtually from home since October 2020 without issue.

47. During the first January 18, 2021 telephone call, Plaintiff informed Grant and Storlie that it was reasonable for her to continue performing the duties and responsibilities of her Human Resources & Payroll Manager position virtually from home until she gave birth in February 2021.

48. During the first January 18, 2021 telephone call, Grant told Plaintiff that she would "talk with corporate HR" and "get back to you."

49. Later on or about January 18, 2021, Grant and Storlie called and spoke to Plaintiff via telephone (hereinafter simply, the "second January 18, 2021 telephone call").

50. During second January 18, 2021 telephone call, Grant told Plaintiff that if Plaintiff could not immediately begin physically performing and fulfilling the duties and responsibilities of her Human Resources & Payroll Manager position from its Kenosha, Wisconsin location, Defendant would terminate her employment.

51. During second January 18, 2021 telephone call and regarding Plaintiff's impending termination, Grant told Plaintiff: "It's not performance related."

52. During second January 18, 2021 telephone call, Grant told Plaintiff: "You've been out of the building for four months now and if you take FMLA leave you'll be gone for another 3 months," or words to that effect.

53. During second January 18, 2021 telephone call, Grant told Plaintiff that she would be eligible for re-hire at Defendant after "you have your baby and can come back to work," or words to that effect.

54. Effective January 22, 2021, Defendant terminated Plaintiff's employment.

## FIRST CAUSE OF ACTION – FAMILY AND MEDICAL LEAVE ACT (INTERFERENCE)

55. Plaintiff reasserts and incorporates all paragraphs set forth above as if restated herein.

56. Defendant intentionally interfered with Plaintiff's rights by terminating Plaintiff's employment in order to prevent her from using protected leave commencing on or about January 27, 2021, in violation of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601 *et seq*.

57. As a result of Defendant's intentional violations of the FMLA, Plaintiff suffered damages in the form of loss of wages and other employment benefits and insurance.

## SECOND CAUSE OF ACTION – AMERICANS WITH DISABILITIES ACT (TERMINATION)

58. Plaintiff reasserts and incorporates all paragraphs set forth above as if restated herein.

59. Defendant intentionally discriminated against Plaintiff by terminating her employment because of her Disability, in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act

Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.*

60. As a result of Defendant's intentional discrimination, Plaintiff suffered damages in the forms of lost wages and other employment benefits, pain and suffering, emotional distress, pre-judgment interest and post-judgement interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION – AMERICANS WITH DISABILITIES ACT (FAILURE TO ACCOMMODATE)

61. Plaintiff reasserts and incorporates all paragraphs set forth above as if restated herein.

62. Defendant intentionally discriminated against Plaintiff by failing to reasonably accommodate her Disability, effectively terminating her employment, in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.*

63. As a result of Defendant's intentional discrimination, Plaintiff suffered damages in the forms of lost wages and other employment benefits, pain and suffering, emotional distress, pre-judgment interest and post-judgement interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION – TITLE VII (TERMINATION)

64. Plaintiff reasserts and incorporates all paragraphs set forth above as if restated herein.

65. Defendant intentionally discriminated against Plaintiff by terminating her employment because of her pregnancy, in reckless disregard for her federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act.

66. As a result of Defendant's intentional discrimination, Plaintiff suffered damages in the forms of lost wages and other employment benefits, pain and suffering, emotional distress, pre-

judgment interest and post-judgement interest, and attorneys' fees and costs.

## FIFTH CAUSE OF ACTION – TITLE VII (FAILURE TO ACCOMMODATE)

67. Plaintiff reasserts and incorporates all paragraphs set forth above as if restated herein.

68. Defendant intentionally discriminated against Plaintiff by failing to reasonably accommodate her pregnancy, effectively terminating her employment, in reckless disregard for her federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act.

69. As a result of Defendant's intentional discrimination, Plaintiff suffered damages in the forms of lost wages and other employment benefits, pain and suffering, emotional distress, pre-judgment interest and post-judgement interest, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing back pay, front pay and/or reinstatement, liquidated damages, compensatory damages, punitive damages, pre- and post-judgment interest, and reimbursement for other benefits and expenses to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Dated this 23rd day of March, 2021

                                            WALCHESKE & LUZI, LLC
                                            Counsel for Plaintiff

                                            **s/ *Scott S. Luzi*** _____
                                            James A. Walcheske, State Bar No. 1065635
                                            Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail sluzi@walcheskeluzi.com